1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN MONETTI, JR.,

Plaintiff,

v.

CITY OF SEATTLE, a municipal corporation,
SHANDY COBANE, an individual; MARY L.
WOOLLUM, an individual,

Defendants.

CASE NO. C11-1041 RSM

ORDER ON MOTION FOR SUMMARY
JUDGMENT

Plaintiff Martin Monetti, Jr., appearing through counsel, filed this civil rights action pursuant to 42 U.S.C. §§ 1981 and 1983, naming two individual police officers, Shandy Cobane and Mary Woollum, and the City of Seattle.  The complaint also asserts state law claims of assault and battery, outrage, negligent infliction of emotional distress, and negligence.  The matter is before the Court for consideration of defendants' motion for summary judgment.  Dkt. # 24.   Oral argument was heard on June 13, 2012.  For the reasons set forth below, the Court shall grant the motion in part and deny in part.

//

//

ORDER - 1

FACTUAL BACKGROUND

1

2        This action arises from an investigatory stop of the plaintiff and two other men suspected of an

3  armed robbery.  The following facts are not in dispute and are supported by the record.  Just after 1 a.m.

4  on the morning of April 17, 2010, Seattle Police Department's 911 Dispatch received a call reporting an

5  armed robbery in the parking lot of the China Harbor Nightclub.  The caller, Walter Flores-Cruz,

6  reported that he had been robbed by four or five Latino men who were armed with a handgun and a

7  large knife that he described as a "machete."  At almost the same time another call came in to 911 from

8  a second individual, Eliezer Duran-Acosta, reporting that he and his girlfriend had been assaulted in the

9  parking lot of the China Harbor by several Latino males. Duran indicated that one of the assailants was

10  armed with a handgun while another had brandished a large machete.

11       A total of sixteen officers responded to the parking lot of China Harbor in response to the 911

12  call, including the defendants, Det. Cobane and Ofc. Woollum. K9 Ofc. Hairstrom also responded to the

13  scene and immediately began searching the parking lot for suspects matching descriptions given by the

14  victims.  Upon seeing three Latino-appearing males, two of whom matched the description of the

15  suspects, walking away from China Harbor some distance removed, Ofc. Hairstrom stopped the three

16  men at gunpoint, ordered them to the ground, and immediately radioed his position to the other officers.

17  He then handcuffed one of the suspects, Denis Garcia Garcia.  All three men were lying face-down on

18  the cement sidewalk in the prone position, with the plaintiff in the middle.  Det. Cobane and Ofc.

19  Woollum responded to Ofc. Hairstrom's call.  Part of what follows was captured on videotape by a

20  freelance videographer positioned across the street.

21       As a number of officers surround the suspects, Ofc. Cobane crouched near the plaintiff and said,

22  "Keep your fucking head on the ground. Don't you start. You got me? I'll beat the fucking Mexican piss

23  out of you, homey. You feel me?"  Declaration of Shandy Cobane, Dkt. # 26. When the plaintiff moved

24  his right hand toward his face, Det. Cobane used his right foot to step forcefully on the hand of the

25  plaintiff and remained standing on his hand for about twenty seconds.  After plaintiff's hand is trapped,

26  Ofc. Woollum walks over to the plaintiff and forcefully steps on his right calf.  At no time while lying

27  prone on the ground were the suspects searched for the weapons in question.  The officers never

28   ORDER - 2

1    attempted to handcuff the plaintiff despite numerous officers surrounding him throughout the incident.

2    A few moments later the plaintiff was lifted from the sidewalk and ultimately released.  Facts are in

3    dispute about the nature and extent of the force caught on videotape, as well as force and comments

4    alleged to have occurred before the recording began.

5          Plaintiff filed this complaint asserting seven causes of actions: Count One for unreasonable use

6    of force in violation of the Fourth Amendment and 42 U.S.C. § 1983, against the individual defendants;

7    Count Two, intentional discrimination in violation of the Fourteenth Amendment of the U.S.

8    Constitution and 42 U.S.C. §§ 1981 and 1983, against the individual defendants; Count Three, Liability

9    of the City of Seattle for Policies, Practices and/or Customs in violation of the Fourth and Fourteenth

10   Amendments and 42 U.S.C. §§ 1981 and 1983; Count Four, Assault and Battery, against the individual

11   defendants; Count Five, Negligence, against the City of Seattle; Count Six, Outrage, against the

12   individual defendants; Count Seven, Negligent Infliction of Emotional Harm, against the individual

13   defendants. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §

14   1367.

15         Plaintiff has filed a motion to compel discovery (Dkt. #19) and Defendants moved to bifurcate

16   discovery and trial (Dkt. #21). These two motions were struck from the Court's calendar without

17   prejudice to renewal (Dkt. #46), pending a ruling by the Court on the motion for summary judgment.

18   Plaintiff and defendants also make a number of motions to strike in the plaintiff's response to the motion

19   for summary judgment (Dkt. #52) and the defendant's reply (Dkt. # 55).

20                                              DISCUSSION

21         I.  Legal Standard

22         Summary judgment is proper where "the movant shows that there is no genuine dispute as to any

23   material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  An issue

24   is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material

25   if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,*

26   477 U.S. 242, 248 (1986).  The evidence is viewed in the light most favorable to the non-moving party.

27   *Id.*  However, "summary judgment should be granted where the nonmoving party fails to offer evidence

28   ORDER - 3

from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

II.  Qualified Immunity Analysis

Qualified immunity shields public officials from civil damages for the performance of their discretionary functions.  The defense of qualified immunity is more than a "mere defense to liability", but is actually a complete immunity from suit, and from all the risks, distractions and "inhibition[s] of discretionary action, and deterrence of able people from public service," that go along with being a defendant in a civil lawsuit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties. *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

Both individual officers here have asserted the defense of qualified immunity from plaintiff's §1983 claims.  In determining whether qualified immunity applies, the Court engages in a two-step process.  First, the Court considers whether, taking the facts in the light most favorable to plaintiff, they show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the answer is no, then the inquiry ends there.  However, if a violation could be demonstrated from a view of the evidence favorable to plaintiff's position, then the question for the Court is whether the right violated was so clearly established that a reasonable officer would understand that his conduct violated that right. *Id*.  The Court has discretion to consider these two factors in reverse order, as appropriate. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A.  Excessive Force

Plaintiff contends that his Fourth Amendment right to be free from excessive use of force was violated.  We first analyze the second prong of the *Saucier* test, whether or not the plaintiff's right to be free from excessive force was clearly established in April, 2010.  Put another way, did the officers have

ORDER - 4

"fair warning" that the force used on the plaintiff was excessive? *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).  The Supreme Court has also made clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 741.  If the inquiry shows that the officers had no such warning, the officers are entitled to qualified immunity.  However, if it shows that the officers had notice, the Court must consider whether the plaintiff's rights were violated by the officers' conduct.

It is beyond dispute that it was clearly established before April, 2010 that "force is only justified when there is a need for force." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 396 (1989)). The application of handcuffs in a rough manner was held to be excessive force in 1989.  *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989).  Further, in *Palmore v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993), the court found that application of handcuffs in a way that causes bruising and pain is an unreasonable use of force.  While these cases are not factually identical, logical reasoning follows that restraining a suspect's hand by stomping on it and pinning it to the cement sidewalk or stomping on his calf, could also be unreasonable. The plaintiff claims the stomp on his hand caused a scratch and left a scar that he bears to this day.  Declaration of Martin Monetti, Dkt. #50, ¶ 4.  He further claims that the stomp on his leg, the forcing down of his head, a knee to the back, and kicks to the head all caused additional pain and injury.  *Id.* at ¶ 5-7.  Because we must assume at this point all facts presented by the non-moving party are true, a reasonable officer would have had fair warning that causing unnecessary pain to restrain a suspect's hands and legs is excessive force.

We now turn to whether the officers violated the plaintiff's constitutional rights.  Use of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386 (1989).  The inquiry is a fact specific balancing test and requires that the Court consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade police by flight.  *Id.* at 396.  The most important of the Graham factors is the threat posed to the officers

ORDER - 5

and bystanders.  *See Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir.1994).  Additional factors can be considered, including the availability of less intrusive methods than the force employed.  *See Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010).   Reasonableness should be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396.  Additionally, the reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id*. at 396-97.

Applying the Graham factors to this case requires factual determinations regarding the safety risk and the flight risk, which must be left to the jury.  The defendants apply *Scott v. Harris*, 550 U.S. 372, 380-381 (2007), stating that the videotape shows plainly that the version of facts posed by the plaintiff are untrue, and thus summary judgment is required.  The defendants also argue that the plaintiff has created materially disputed facts only by contradicting himself on the record, and they have moved to strike such contradictions.  The defendants arguments are without merit.  First of all, *Scott v. Harris* is distinguishable because the video in this case did not capture the entire incident and is susceptible to differing interpretations.  The Court finds that a reasonable jury could find that the video actually supports the plaintiff's theory that the threat to officer and bystander safety was actually quite low, and that the plaintiff was not a flight risk.  Further, the Court disagrees with the defendant's argument that the tactics of the police department are irrelevant to the excessive force claim.  The availability of alternatives to force is a factor to be considered, and offers insight into whether the officer's conduct was reasonable in light of the totality of the circumstances. For these reasons, what the video actually shows must be left for the fact-finder to determine.

As for the defendant's arguments that contradictions in the plaintiff's statements are being used to create a material issue of fact, the Court disagrees.  It is true that a party cannot use a sham affidavit to contradict a prior statement to create a material issue for the purpose of overcoming summary judgment.  *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975).  However, affidavits contradicting prior testimony that result from "an honest discrepancy, a mistake, or the result

ORDER - 6

of newly discovered evidence" and not a "sham" are acceptable by the Court. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) The Ninth Circuit reversed a summary judgment motion based on a sham affidavit theory where the contradiction was not made in a prior sworn statement, but rather in unsworn letters. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir.1999). While the plaintiff has made some changes to his testimony, most of these changes are reasonable in light of the circumstances.  The plaintiff was lying face-down, in a semi-lit parking lot, in an intoxicated state, while numerous officers circled around him.  It is not unreasonable that the nature of the force used and the comments made, as well as the exact officer involved for each contact during the "20-30 minutes" these three men were prone on the concrete, was precisely retained by the plaintiff.  See Hairston Dep., p. 72. Reasonable corrections to the record should be allowed and the plaintiff's credibility should be determined by the jury.

Defendant argues that the allegation by the plaintiff of an injury to his hand is inadmissible as it contradicts a prior admission. See Dkt. 56, Exh. 1.  The Court recognizes that this issue is somewhat different than the issue above because the seemingly contradictory statement was made after the plaintiff had time to take note of his injuries.  However, in order for the Court to exclude the allegation of injury to Mr. Monetti's hand, it would first have to conclude that the allegation was a "sham".  *Kennedy*, 952 F.2d at 267.  The Court is unable to so conclude.  The plaintiff argues that the injury is actually on the plaintiff's wrist, which, if believed, explains the answer to the OPA's question as to his hand. The Court cannot conclude the declaration of the plaintiff is a "sham" for the purpose of creating a disputed issue of fact, and leaves credibility determinations appropriately to the jury.

For the above reasons, the defendant's motion for summary judgment on the excessive force claim is DENIED as to both individual defendants.

B.  Equal Protection

With respect to plaintiff's claim of discrimination in violation of his right to equal protection, the Court first turns to the question of whether the plaintiff's constitutional right to be free from discrimination on the basis of race or national origin was violated by the defendants.  In order to prove

ORDER - 7

1   discrimination in violation of § 1983, a defendant must have acted with the intent to discriminate. *Peters*

2   *v. Lieuallen*, 746 F.2d 1390, 1393 (9th Cir. 1984).  The burden shifting analysis requires the plaintiff

3   first establish a prima facie case that the officer's conduct was motivated by a discriminatory purpose.

4   *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 271 n. 21

5   (1977).  The burden then shifts to the defendants to show that there was no discriminatory effect or that

6   the officers acted no differently because of the discrimination.  *Id*.  The plaintiff must then show that the

7   reasons given are merely pretext.  *Id*.

8          At the summary judgment stage, § 1983 cases are "remarkably similar" to Title VII claims.

9   *Federal Deposit Ins. Corp. v. Henderson*, 940 U.S. 465, 471-72 & n. 14 (1991).  The Ninth Circuit has

10  held that a single statement, such as "dumb Mexican", is direct evidence of discriminatory animus and

11  can create an inference of discriminatory intent.  *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145,

12  1149. *See also Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1112 (9th Cir.

13  1994) ("stereotyped remarks . . . made . . . at the same time that they were subjecting [plaintiff] to less

14  favorable working conditions is sufficient to raise an inference of discriminatory intent").

15         The plaintiff has provided direct evidence of discrimination as to Det. Cobane.  Det. Cobane is

16  not disputing that he directed the comment, "I'll beat the fucking Mexican piss out of you, homey" at

17  the plaintiff.  The plaintiff also asserts that he heard an unidentified officer say "You fucking Mexicans

18  are making my job harder."  Declaration of Martin Monetti, Dkt. # 50.  While this has not been

19  attributed to Det. Cobane directly because of the downward facing position of the plaintiff throughout

20  the incident, in light of Det. Cobane's other comments, it could reasonably be inferred to be the

21  comment of Det. Cobane.  While this would bolster the plaintiff's case, the first comment alone is

22  enough to raise an inference of discriminatory intent.  The plaintiff has carried his burden of showing

23  evidence of a prima facie case as to Det. Cobane.

24

25         Det. Cobane attempts to rebut the evidence of discriminatory intent by claiming that the entire

26  phrase was merely a control tactic.  This is a disputed issue of material fact for the jury.  Det. Cobane

27  fails to offer clear evidence to shift the burden back to the plaintiff.  While he claims that the entire

28   ORDER - 8

comment can be explained as necessary force, he fails to show clear evidence as to why the term "Mexican" was necessary to help control the plaintiff.   The jury must determine whether the comment made by the defendant was discriminatory abuse by a police officer or a control mechanism as claimed by the officer.

However, the plaintiff has failed to carry his burden to make out a prima facie case that Ofc. Woollum acted with discriminatory intent.   The plaintiff argues that because Ofc. Woollum heard the comment of Det. Cobane, failed to show any disapproval, and moments later stomped on the plaintiff's right calf, this is evidence of discriminatory motive as to her actions.   The plaintiff fails to cite authority for the proposition that a failure to chastise a fellow officer for derogatory remarks, or using physical force against a suspect after hearing a racially charged comment, is sufficient evidence to show discriminatory intent as to Ofc. Woollum.   Therefore, plaintiff's equal protection claim against Ofc. Woollum fails and shall be dismissed.

The Court now turns to the question of whether the plaintiff's right to equal protection was clearly established in April, 2010.  Even if the constitutional rights of the plaintiff were violated, unless the right is clearly established, the officer is entitled to qualified immunity.  *Saucier*, 533 U.S. at 201. "The constitutional right to be free from such invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it."  *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980).  A case with materially similar facts is unnecessary to show a right is clearly established, and is "especially true in equal protection cases because the non-discrimination principle is so clear."  *Elliot-Park v. Manglona*, 592 F. 3d 1003, 1008 (2010).  The defendant alleges that he could not have known that adding the term "Mexican" into his "control mechanism" comment would be unlawful discrimination.  However, the Court finds a reasonable officer should have known that inserting racially charged language into "control mechanisms" clearly violates the principles of equal protection.

For the above reasons, the defendant's motion for summary judgment on the equal protection claim is DENIED as to Det. Cobane and GRANTED as to Ofc. Woollum.

ORDER - 9

1     III.  State Law Claims

2     A. Assault and Battery

3     Assault is apprehension of imminent physical violence caused by a perpetrator's actions or

4 threats. *Brower v. Ackerley*, 88 Wn. App. 87, 92, 943 P.2d 1141 (1997).  Battery is a harmful or

5 offensive contact with a person which is the result of an act intended to cause a plaintiff or another

6 person such a contact. *McKinney v. City of Tukwila*, 103 Wn. App. 391, 408, 13 P.3d 631 (2000).

7 Washington provides qualified immunity for officers who (1) carry out a statutory duty, (2) according to

8 procedures dictated to him by statute and superiors, and (3) acts reasonably.  *Luchtel v. Hagemann*, 623

9 F. 3d 975, 984 (9th Cir. 2010) (citing *Staats v. Brown*, 139 Wn.2d 757, 778, 991 P.2d 615 (2000)).

10 Plaintiff has raised disputed issues of material fact as to whether assault and battery occurred.  He has

11 also presented sufficient evidence to preclude summary judgment on the basis of qualified immunity.

12 The videotape provides evidence of threats and harmful or offensive touching. Dkt. 27, Ex. C.  The

13 Plaintiff has also presented evidence that the defendants acted unreasonably.  Summary judgment for

14 assault and battery and qualified immunity is DENIED.

15     B. Outrage

16     The elements for the tort of outrage are "(1) extreme and outrageous conduct, (2) intentional or

17 reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional

18 distress." *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989) (quoting *Rice v. Janovich*, 109

19 Wn.2d 48, 61, 742 P.2d 1230 (1989); Restatement (Second) of Torts § 46 (1965)).  Conduct must go

20 "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

21 civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975).  The Court must

22 determine whether or not reasonable minds could differ as to whether the conduct was sufficiently

23 outrageous.  *Phillips v. Hardwick*, 29 Wn. App. 382, 387, 628 P.2d 506 (1981).

24     Plaintiff fails to allege conduct that rises to the level of outrage.  Reasonable jurors could not

25 conclude that verbal insults and the physical force used here was so unconscionable as to rise to the

26 level of outrage, nor is there evidence of severe emotional distress suffered by the plaintiff. *See Strong*

27 *v. Terrell*, 147 Wn. App. 376, 386, 195 P.3d 977 (2008) (summary judgment was proper where plaintiff

28  ORDER - 10

alleged only conduct of screaming and ridiculing insults and indignities, over a two-year period); *Womack v. Von Rardon*, 133 Wn. App. 254, 261, 135 P.3d 542 (2006) (record is insufficient to establish the requisite intent or the necessary severity in an outrage claim where teenagers stole a cat and set it on fire, causing its death and distress to its owner).  The alleged conduct of Det. Cobane and Ofc. Woollum is not more outrageous than the cases cited above, nor did the plaintiff allege emotional distress beyond nightmares and general anxiety. The defendant's motion for summary judgment as to the claim of outrage is GRANTED.

  C. Negligent Infliction of Emotional Distress

   In addition to the basic elements necessary to prove negligent infliction of emotional distress, the plaintiff must provide evidence of objective symptomatology.  *Hunsley v. Giard*, 87 Wn.2d 424, 434-36, 553 P.2d 1096 (1976).  To satisfy the symptomatology requirement, "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical science."  *Hegel v. McMahon*, 136 Wn.2d 122, 135, 960 P.2d 424 (1998).  "Nightmares...[and] fear may be sufficient. However . . . they must constitute a diagnosable emotional disorder." *Id.*  While the plaintiff has alleged suffering from nightmares and general fear, he has failed to provide any evidence that this has caused a disorder supported by medical science.  Summary judgment on plaintiff's claim of negligent infliction of emotional distress is GRANTED.

  D. Negligence

   The plaintiff complains that the city negligently breached its duty to use reasonable care in the training, supervising, and retraining of the defendants.  This claim is directly connected to the Monell claim of municipal liability, which was withdrawn by defense counsel during oral argument.  The city's liability, including the negligence claim, is thus not at issue in this summary judgment motion.

  IV.  Motions to Strike

  A.  Plaintiff's Motion to Strike Evidence Asserting Plaintiff was Involved in Robbery

   Defendant argues that this evidence is offered for "context".  However, what the officers discovered after the incident is irrelevant and is properly excluded under Federal Rule of Evidence 401. The Motion to strike is GRANTED.

ORDER - 11

B.  Plaintiff's Motion to Strike Opinions in Report of Grant Fredericks

Defendant argues that the opinions of Grant Fredericks will aid the jury because of his extensive knowledge of the technology surrounding video imaging.  However, the Court believes that the jury is capable of viewing the videotape and making a factual determination as to what it shows.  Therefore, the opinions of Grant Fredericks are excluded for failure to satisfy Federal Rule of Evidence 702(a), which requires "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact at issue."  The motion to strike Grant Frederick's report is GRANTED.

C.  Defendant's Motion to Strike Declaration of Johnny "Gil" Jurado and the Department of Justice Report

Defendant declined to argue the admissibility of the DOJ Report because they withdrew their summary judgment motion insofar as it concerns the Monell claim and the city's liability.  The Court agrees the issue is unnecessary to the motion currently before it and declines to rule on the admissibility of the DOJ report at this time.  The Declaration of Johnny "Gil" Jurado was offered regarding the Motion to Compel, which was stricken from the Court's docket until resolution of the summary judgment motion.  The Court defers ruling on this motion to strike.

D.  Defendant's Motion to Strike Various Exhibits

Defendant argues that the statements and opinions of Thomas Gahan, the statements by Frank Clark, the letter of Gregory McKnight, and Tag Gleason's Proposed Disposition for the OPA-IS Case should all be stricken from the record because they are inadmissible hearsay.  Because the Court did not rely on these statements, the Court does not rule on their admissibility at this time.

CONCLUSION

Defendants' motion for summary judgment is DENIED as to plaintiff's claim of excessive force.  Defendant's motion for summary judgment is DENIED as to plaintiff's claim of unlawful discrimination regarding Det. Cobane and GRANTED as to Ofc. Woollum. Summary judgment for the state law claims

//

//

ORDER - 12

of assault and battery is DENIED.  Summary judgment is GRANTED as to the claims for outrage and negligent infliction of emotional distress.

Dated this 21st day of June, 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 13